UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NORBERT NWOSU,

        Plaintiff,

    v.

WARDEN, FLORIDA SOFT SIDE
SOUTH,  U.S. ATTORNEY
GENERAL,

        Defendants.

_____/

Case No. 2:26-cv-183-KCD-DNF

## **ORDER**

Petitioner Norbert Nwosu is a Nigeria citizen who is subject to a final order of removal. (Doc. 1 ¶ 30.)[1] He was recently detained by U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging the legality of his continued custody. (*Id.* at 24.)

The background of the dispute is relatively straightforward. Nwosu entered the United States in 1989 and was ordered removed *in absentia*. He remained in the country for decades until an arrest for misdemeanor battery in 2021 brought him into ICE custody. (*Id.* ¶¶ 30-31.) ICE released him two months later on an "Order of Supervision," which is essentially a form of immigration parole where he checked in with the government but otherwise

_____

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

lived his life. (*Id.* ¶ 31.) Then, in November 2025, ICE revoked his release and arrested him. To justify the decision, the agency cited his "recent criminal history" and failure to follow the conditions of supervision. (*See* Doc. 11-5.)

Nwosu now challenges his sudden re-detention. He argues it is unlawful on three main fronts. First, he raises a substantive due process claim, claiming his removal is not reasonably foreseeable under the Supreme Court's framework in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 10, 16.) Second, he presses a procedural due process challenge, claiming the Government stripped him of his liberty without affording him adequate notice or an opportunity to be heard. (*Id.* at 17.) Finally, he alleges ICE flouted its own binding regulations—specifically 8 C.F.R. §§ 241.4 and 241.13—by denying him a prompt informal interview and by allowing an unauthorized official to execute the revocation notice. (*Id.* at 19-21.)

The Government, predictably, sees things differently. At the threshold, it argues that 8 U.S.C. § 1252(g) strips this Court of jurisdiction. (Doc. 11 at 3.) Should we reach the merits, the Government maintains the detention is fully authorized—indeed, mandated—by 8 U.S.C. § 1231. In its view, Nwosu's *Zadvydas* claim is premature because he has not been detained long enough. (*Id.* at 5, 8-9.) Finally, the Government insists it followed the letter of the law, arguing that the specific regulatory subsection used to revoke Nwosu's release does not require an informal interview. (*Id.* at 5-7.)

2

The Government's jurisdictional argument stretches the statutory text too far. But while the Court can hear the case, Nwosu's substantive challenge to his detention under *Zadvydas* falls short. That claim is simply premature under the established six-month benchmark. His procedural claims, by contrast, hit their mark. Nwosu was never provided an interview or any real chance to respond to the reasons for his re-detention. Because the right to be heard in a meaningful manner is a fundamental requirement of due process, more process is constitutionally required here. Nwosu's petition is thus **GRANTED IN PART AND DENIED IN PART** as set forth below.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The Court starts, as it must, with the threshold issue of jurisdiction. As mentioned, the Government claims that a provision in the Immigration and Nationality Act—8 U.S.C. § 1252(g)—strips district courts of authority to hear claims arising from the execution of removal orders. Because Nwosu was detained to carry out his final removal order, the argument goes, his habeas petition is merely an impermissible attempt to challenge that ongoing legal process. (Doc. 11 at 4.)

Even if this argument was legally sound (which it isn't), there is a more fundamental problem: the Government's jurisdictional theory doesn't match its own actions. While it now claims that Nwosu is being held solely to execute his removal, the notice issued at the time of his arrest says something else entirely. That notice cited Nwosu's "recent criminal history" and his failure to comply with the conditions of his release. (Doc. 11-5.) So on the current record, the Government is essentially asking the Court to ignore its own contemporaneous explanation in favor of a convenient litigation label. The Government cannot claim Nwosu was detained to execute a removal order when its own paperwork identifies a discretionary revocation for alleged rule-breaking as the true basis for the arrest.

In the end, this shell game is beside the point. Even if we take the Government's litigation position at face value—treating Nwosu's detention as

4

the literal "execution" of a removal order—the jurisdictional argument still falls flat. Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." *Id.* This provision "limits habeas corpus jurisdiction, including under § 2241." *Islas v. DHS/ICE Off. of Chief Couns. - ATD*, No. CV 323-002, 2023 WL 2761710, at *1 (S.D. Ga. Jan. 23, 2023); *see also Wallace v. Sec'y, U.S. Dep't of Homeland Sec.*, 616 F. App'x 958, 961 (11th Cir. 2015).

But § 1252(g) does not cover "all deportation-related claims." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 478 (1999). It has a far narrower reach. It forecloses judicial review of three discrete actions by the Attorney General: her "decision or action to commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 482. As the Supreme Court recently reiterated, § 1252(g) does not "sweep in any claim that can technically be said to arise from the three listed actions." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018). Instead, it "refer[s] to just those three specific actions themselves." *Id.*

Nwosu's petition steers clear of those forbidden actions. He is not asking this Court to vacate his removal order or to stop the Government from putting him on a plane. Instead, he is challenging the substantive and

procedural mechanics of his current detention. His argument is that the Government failed to follow its own rulebook when it revoked his release. (*See* Doc. 12 at 3.) A claim that the Government locked someone up in violation of binding regulations is a challenge to the process of detention, not a challenge to the commencement or execution of a removal order. *See, e.g.*, *Navarro v. Bondi*, No. 8:25-CV-3213-KKM-NHA, 2025 WL 3275944, at *2 (M.D. Fla. Nov. 25, 2025).

The core of this case is not about the Attorney General's decision to detain Nwosu. It's about whether the Government followed the law and its own regulations in that process. (*See* Doc. 1.) Such a claim is best understood as independent of, and collateral to, removal because it may be resolved without affecting the Attorney General's prosecutorial discretion that § 1252(g) was meant to preserve. *See Reno*, 525 U.S. at 485 n.9 ("Section 1252(g) was directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion."); *see also Arroyo v. Diaz*, No. 25-62676-CIV, 2026 WL 279656, at *4 (S.D. Fla. Feb. 2, 2026); *Banega v. Noem*, No. 2:25-CV-1152-JES-DNF, 2026 WL 234042, at *2 (M.D. Fla. Jan. 29, 2026).

What is more, if the Government's reading were correct, § 1252(g) would act as a jurisdictional black hole for anyone held in immigration custody. Under its theory, so long as the executive branch points to a final

removal order, it could hold a noncitizen indefinitely, ignore its own regulations, or subject the detainee to unconstitutional conditions, all while insisting that federal courts are powerless to intervene. The Supreme Court has never read § 1252(g) so broadly. *Zadvydas*, 533 U.S. at 688 (citing § 1252(g) yet concluding "that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention"); *see also See also Arroyo*, 2026 WL 279656, at *4, *Banega*, 2026 WL 234042, at *2.

With the jurisdictional underbrush cleared away, the Court turns to the merits. Nwosu mounts a multi-pronged attack, bringing a mix of substantive and procedural challenges to his renewed confinement. As it turns out, while his broader theories regarding the length of his detention falter, his procedural due process claim has teeth. The substantive claims are addressed in turn.

**Count I—Substantive Due Process**

A noncitizen subject to a final order of removal, like Nwosu, has no inherent right to walk free while awaiting deportation. *See* 8 U.S.C. § 1231. "Detention during deportation proceedings," the Supreme Court has explained, is simply "a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). But there is a catch. Holding an admitted alien indefinitely is also a constitutional non-starter

7

since "the Due Process Clause applies to all persons within the United States." *Zadvydas*, 533 U.S. at 693.

To reconcile these points, the Supreme Court in *Zadvydas* capped "an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. And to give lower courts a workable yardstick, the Court drew a line at six months: any post-removal detention lasting six months or less is "presumptively reasonable." *Id.* To have a substantive due process claim in this context, then, "the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

Apply that framework here, and Nwosu's claim immediately runs into a math problem: he has not been detained long enough. ICE grabbed him on November 4, 2025. Because he has been in custody just over four months, he remains squarely within the window in which his detention is presumptively reasonable. *See Guerra-Castro v. Parra*, No. 1:25-CV-22487, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months"); *see also Jiang v. Mukasey*, No. 208-CV-773-FTM-29DNF, 2009 WL 260378, at *2

(M.D. Fla. Feb. 3, 2009); *Noel v. Glades Cnty. Sheriff*, No. 2:11-CV-698-FTM-29, 2011 WL 6412425, at \*2 (M.D. Fla. Dec. 21, 2011).

To keep his claim alive, Nwosu proposes a different way to run the clock. He argues that the six-month presumptively reasonable period is tethered to the beginning of the statutory removal period, not to the time he actually spends in physical custody. His theory goes like this: the six-month timer starts ticking the moment a removal becomes final, regardless of whether the noncitizen is sitting in a detention center or living freely in the community. And because his removal order became final back in 1998, the six-month window slammed shut more than two decades ago. (Doc. 12 at 4-5.) Thus, his due process claim is perfectly ripe for review.

This argument makes little sense. *Zadvydas* was aimed at the severe, physical deprivation of liberty that comes from sitting in a jail cell indefinitely. The Court "used the words 'detain' and 'custody' to refer exclusively to physical confinement and restraint." *Jennings*, 583 U.S. at 311. Against that backdrop, it is illogical to run a clock designed to prevent indefinite imprisonment while a person is out living freely in the community. "Because *Zadvydas* clearly involved *detention* of a petitioner during the presumptively reasonable period, it defies common sense to suggest that *Zadvydas* time can run while a petitioner is not in custody." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1192 (N.D. Ala. 2011). The six-month clock

measures actual lockup, not supervised freedom. *See Akinwale*, 287 F.3d at 1052 ("[I]n order to state a claim under *Zadvydas* the alien ... must show post-removal order *detention* in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." (emphasis added).)

When the Government holds a noncitizen for only a few months to try to execute a valid removal order, as claimed here (Doc. 11 at 9), it is not doling out an unconstitutional penalty. It is simply doing what the regulatory scheme authorizes. Because his brief confinement remains firmly tethered to a legitimate, civil immigration purpose, Nwuso's substantive due process claim fails. *See H.N. v. Warden, Stewart Det. Ctr.*, No. 7:21-CV-59-HL-MSH, 2021 WL 4203232, at *3 (M.D. Ga. Sept. 15, 2021); *Gudino v. Lowe*, No. 1:25-CV-00571, 2026 WL 526366, at *8 (M.D. Pa. Feb. 25, 2026) ("[T]he length of detention is generally not unreasonable until the noncitizen has been detained for more than six months.").

**Count II—Procedural Due Process**

The Fifth Amendment prohibits deprivation of an individual's life, liberty, or property without due process of law. U.S. CONST. amend. V. "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Courts examine procedural due

10

process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982).

The first step is easy here. Once ICE unlocked the doors and placed Nwosu on supervised release, he acquired a conditional liberty interest that triggered constitutional protection before it could be taken away. *See Young v. Harper*, 520 U.S. 143, 147-48 (1997). This is true even when the released individual is subject to extensive conditions of release. *See Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *11 (M.D. La. Feb. 6, 2026) ("[N]on-citizens have an overwhelming liberty interest in their continued release under [an] Order of Supervision . . . that may not be removed without due process."); *see also Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects.").

That takes us to the second step: determining exactly what process is due. At its core, the Due Process Clause demands that before the government strips a person of a protected liberty interest, it must provide notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333

11

(1976). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

From the record now before the Court, the opportunity to be heard is entirely missing. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (describing the opportunity to present reasons why proposed action should not be taken as a "fundamental due process requirement"). The Government's response is notable for what it leaves out. It points to no hearing, no informal interview, and no immediate forum where Nwosu could contest the sudden detention. Taking a person's liberty and then making them sit in jail for months before even glancing at their paperwork flips the constitutional baseline on its head. Even ICE's own rulebook recognizes that taking away a person's conditional liberty requires far more procedural rigor than a silent, unilateral fiat. *See, e.g.*, 8 C.F.R. §§ 241.4(l), 241.13(i).

Due process is flexible. It "calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). To be sure, Nwosu is a noncitizen subject to a final removal order, meaning he does not possess the full panoply of rights enjoyed by a citizen. But even with that caveat, the Constitution demands more than what has been offered here. While ICE's regulations do provide for a file review within several

12

months after supervision is revoked, *see* 8 C.F.R. § 241.4, that is not sufficient. As other courts have recognized, a belated review, held more than three months after the jail cell door slams shut, is simply too little, too late to protect the core liberty interest at stake. *See Grigorian*, 2025 WL 2604573, at *9; *see also United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("We have said that the complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error[.]").

Nwosu has proven a constitutional violation—the government cut corners and denied him the process he was due. But winning on a procedural claim is one thing; getting the remedy he wants is another.

Nwosu seeks immediate release from custody. (Doc. 1 at 24.) That is a bridge too far. Habeas corpus is, at its core, governed by equitable principles. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). And equity counsels against the drastic remedy of immediate release here for a couple of reasons. *Id.* ("The question, therefore, even where a habeas court has the power to issue the writ, is whether this be a case in which [that power] ought to be exercised.").

First, the natural remedy for a procedural shortcoming is a procedural fix. When an agency skips a step in its own rulebook, the typical judicial response is to force the agency to go back and do its job right—not to throw open the jailhouse doors. *See, e.g.*, *Msezane v. Gartland*, No. 5:19-CV-51, 2020 WL 1042293, at *7 (S.D. Ga. Jan. 29, 2020) ("Critically, the Eleventh Circuit

13

explained in the context of prolonged § 1226(c) detention, procedural due process does not require automatic release of a criminal alien once the detention is unreasonably prolonged but, instead, requires the government to afford the alien an individualized bond inquiry."). The specific injury Nwosu claims here is the deprivation of an informal interview under §§ § 241.4(l) and 241.13(i). The logical cure, therefore, is to order exactly that. Granting a substantive windfall like immediate release for a purely procedural error overreaches. *See Nguyen v. Noem*, 797 F. Supp. 3d 651, 663–64 (N.D. Tex. 2025) ("The Supreme Court [has] made clear that error regarding one's confinement does not mean that release is the appropriate remedy.").

Second, the writ of habeas corpus is fundamentally forward-looking. It asks whether a petitioner's confinement is lawful today and whether it can lawfully continue tomorrow. *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of the prisoner's current detention."). A straightforward fix can easily restore Nwosu's detention into constitutional compliance. Until ICE proves unwilling or unable to provide the process its regulations require, tearing up the detention order is simply premature. In the Court's view, the proper move is to hold the agency to its own rules, test whether it can cure the defect, and reserve the drastic remedy of release for a true failure to

14

comply. To that end, the Government must provide the required interview under 8 C.F.R. § 241.13(i)(3)[2] by April 3, 2026.

### Counts III & IV—The *Accardi* Doctrine

Nwosu does not rest on the Constitution alone. He also invokes the *Accardi* doctrine—a fancy name for the simple, common-sense rule that an agency has to follow its own regulations. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Counts III and IV essentially sing the same tune: ICE skipped the procedural steps required by its own rules before revoking his liberty. Specifically, Nwosu contends the Government took a shortcut by failing to provide a prompt informal interview and by letting an unauthorized official sign the revocation notice. Because these claims are cut from the same cloth, the Court addresses them together.

"[A]gency deviation from its own regulations and procedures may justify judicial relief in a case otherwise properly before the court." *Jean v. Nelson*, 727 F.2d 957, 976 (11th Cir. 1984). And it "goes without saying that ICE, like all government agencies, must follow its own regulations." *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025).

Nwosu's first grievance takes aim at a signature—or rather, the person who made it. He argues the notice revoking his release is a legal nullity

---

[2] Because the Government previously released Nwosu after determining that there was no significant likelihood of his removal (Doc. 1-2), the regulation governing his return to custody here is 8 C.F.R. § 241.13(i). More on this below.

15

because it was not signed by one of the specific, high-ranking officials named in 8 C.F.R. § 241.4(l)(2). *Cf. Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 160 (W.D.N.Y. 2025) ("[U]nder § 241.4(l)(2), the officials with the power to revoke release after making certain findings include field office directors and any other officials delegated the function or authority ... for a particular geographic district, region, or area."). But there is a foundational problem with this argument: Nwosu is reading the wrong regulation.

While § 241.4 generally applies to aliens detained pending removal, like Nwosu, its "custody review procedures . . . do not apply after the Service has made a determination . . . that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future." 8 C.F.R. § 241.4(b)(4). In those circumstances, 8 C.F.R. § 241.13 supplies the framework for re-detention. *See Choy v. Woosley*, No. 4:25-CV-197-DJH, 2026 WL 324601, at *3 (W.D. Ky. Feb. 6, 2026).

The only way to read the record here is that Nwosu falls into the latter camp. Look at the order of supervision itself. It does not reflect a discretionary, case-by-case decision to release him under § 241.4(e). Instead, the order explicitly rests on ICE's inability to execute his removal—the precise trigger for a release under § 241.13. Because his initial release was seemingly governed by § 241.13, the mechanics of his revocation are covered

16

by that same provision. Section 241.4 simply has no role to play here. *See Choy*, 2026 WL 324601, at *3.

Here is the catch: unlike its counterpart, § 241.13 contains no rigid signature requirement limiting revocation authority to field office directors or other specific high-ranking officials. It simply says the agency can revoke an order of supervision if there is a violation of the conditions of release. Nwosu is trying to borrow a procedural hurdle from a completely different regulation and wedge it into his case. But a petitioner cannot mix and match regulatory provisions to manufacture an *Accardi* violation. *Cf. Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008) ("It is the petitioner's burden to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation.").

That brings us to the heart of Nwosu's *Accardi* challenge: the missing interview. Under the governing regulation, ICE is required to conduct an "informal interview" promptly after a noncitizen is returned to custody. 8 C.F.R. § 241.13(i)(3). The purpose of this requirement is straightforward—it provides a meaningful opportunity for the individual to respond to the reasons for their re-detention. *Kem v. Noem*, No. 3:25CV997 DRL-SJF, 2026 WL 100566, at *4 (N.D. Ind. Jan. 14, 2026). But here, no such interview ever occurred. The Government does not point to a date, a location, or even a stray note in a file suggesting that Nwosu was given a chance to speak. When the

17

Government skips a mandatory procedural safeguard meant "to confer a procedural benefit to a class to which complainant belongs," that complete regulatory bypass renders the action "invalid[.]" *Port of Jacksonville Mar. Ad Hoc Comm., Inc. v. U.S. Coast Guard*, 788 F.2d 705, 708 (11th Cir. 1986).

That violation, however, leads to the same remedial dead-end as Nwosu's constitutional due process claim. When an agency fails to hold a required interview under its own regulations, the usual judicial response is to order the interview—not to hand the petitioner a get-out-of-jail-free card. *See, e.g.*, *Msezane v. Gartland*, No. 5:19-CV-51, 2020 WL 1042293, at *7 (S.D. Ga. Jan. 29, 2020). A procedural foul typically calls for a procedural fix. And for the same equitable and practical reasons already discussed, the Court will not order Nwosu's immediate release. Instead, the Government must do exactly what its regulations demand: provide the interview he is due.

### III. Conclusion

The Government violated both the Constitution and the *Accardi* doctrine when it canceled Nwosu's supervision without providing him an opportunity to be heard. But winning on procedure does not entitle him to the substantive windfall of immediate release. Rather, the appropriate remedy is to require the Government to do its job and provide the process due. Accordingly:

1.  Nwosu's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED IN PART** and **DENIED IN PART**.

2.  To the extent Nwosu seeks immediate release from ICE custody, the petition is **DENIED**.

3.  To the extent Nwosu seeks a procedural remedy for the revocation of his supervised release, the petition is **GRANTED**.

4.  Respondents are **ORDERED** to provide Nwosu with the informal interview required by 8 C.F.R. § 241.13(i)(3) by **April 3, 2026**. If that procedure is not provided by the Court's deadline, Respondents are directed to release Nwosu.

5.  The Clerk is directed to enter judgment accordingly and close the case. The Court will retain jurisdiction to enforce this Order.

**ORDERED** in Fort Myers, Florida on March 20, 2026.

Kyle C. Dudek
United States District Judge

19